DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

| | |
|---|---|
| IN RE: ) | |
| ) | |
| INNOVATIVE COMMUNICATION ) | Case No. 07-30012 (JKF) |
| CORPORATION, ) | Chapter 11 |
| ) | |
| Debtor. ) | Adv. No. 09-03085 (JKF) |
| ──────────────────────────) | |
| ) | |
| JAMES P. CARROLL, ) | |
| LIQUIDATION TRUSTEE OF THE ) | |
| LIQUIDATION TRUST FOR THE ) | |
| BANKRUPTCY ESTATES OF ) | |
| INNOVATIVE COMMUNICATION ) | |
| COMPANY, ) | |
| ) | Civil No. 2013-26 |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| OAKLAND BENTA, ) | |
| ) | |
| Defendant. ) | |
| ──────────────────────────) | |

ATTORNEYS:

**Jeffrey B.C. Moorehead, Esq.**
Jeffrey B.C. Moorehead, P.C.
St. Croix, U.S.V.I.
        *For Oakland Benta.*

**Gary D. Underdahl, Esq.**
ASK LLP
St. Paul, MN
**Benjamin A. Currence, Esq.**
Law Offices of Benjamin A. Currence
St. Thomas, U.S.V.I.
    *For James P. Carroll, Liquidation Trustee.*

*In re Innovative*
Civil No. 2013-26
Order
Page 2

## ORDER

**GÓMEZ, J.**

Before the Court is the motion of Oakland Benta ("Benta") to withdraw the reference to this Court's Bankruptcy Division (the "Bankruptcy Court") in Adversary No. 09-03085.

## I.   FACTUAL AND PROCEDURAL HISTORY

This case arises out of the lengthy, ongoing bankruptcy of the Innovative Communication Corporation ("ICC"), a Virgin Islands telecommunications company. Stan Springel ("Springel"), acting as the Chapter 11 Trustee of the Estate of ICC, initiated adversary proceedings against the defendant in this case, Oakland Benta ("Benta"). (Bankruptcy ECF No. 1450.) In the adversary proceedings, Springel seeks to undo transactions entered into between Benta and ICC. (*Id.*) Springel claims that these transactions were either fraudulent conveyances or preferential transfers, and thus disallowed under the Bankruptcy Code. (*Id.*)

To that end, Springel filed a complaint in the Bankruptcy Court on September 21, 2009.  Thereafter on August 9, 2012, Springel amended his complaint (the "Amended Complaint"). (Adv. Proc. ECF No. 49.)  Benta filed his answer to the Amended Complaint on October 1, 2012. (*Id.*)  Benta's October 1, 2012, answer explicitly demanded a jury trial. (*Id.*)

*In re Innovative*
Civil No. 2013-26
Order
Page 3

On October 21, 2012, the Bankruptcy Court entered an Order vesting all claims and causes of action held by the debtors' estates in a liquidation trust (the "Liquidation Trust"). The Bankruptcy Court also approved James P. Carroll ("Carroll") as the Liquidation Trustee.

On March 15, 2013, Benta filed a motion to withdraw the reference in this Court. In his motion, Benta argues that fraudulent and preferential conveyance actions may not be considered in the Bankruptcy Court. Benta seeks to have Adversary No. 09-03085 considered in its entirety by this Court. Carroll filed an opposition to the motion to withdraw the reference, indicating that the motion to withdraw was filed out of time and that a request for withdrawal of the reference was premature as the adversary proceeding is not yet trial ready.

## II.  DISCUSSION

Under certain circumstances, a district court may "withdraw the reference." That is, it may take a proceeding away from the bankruptcy court and decide the matter itself. 28 U.S.C. § 157(d) (West 2013).

> The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding

*In re Innovative*
Civil No. 2013-26
Order
Page 4

> requires consideration of both title 11 and other laws
> of the United States regulating organizations or
> activities affecting interstate commerce.

28 U.S.C. § 157(d).

### III. <u>ANALYSIS</u>

Title 28, Section 157(d) ("Section 157") recognizes two circumstances under which a court may withdraw a reference to the bankruptcy court. A district court must withdraw a proceeding "if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." 28 U.S.C. § 157(d)("mandatory withdrawal"). Where the issue is not subject to mandatory withdrawal, the district court may withdraw in whole or in part "any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown." *Id.*

Benta asserts that withdrawal of the reference is merited in this case because the adversary proceeding is based on claims of fraudulent or preferential conveyances. Proceedings to recover fraudulent or preferential conveyances do not implicate the laws of the United States regulating organizations or activities affecting interstate commerce; rather they require consideration under Title 11 of the United States Code. *See* 11 U.S.C. § 548 (fraudulent transfers and obligations). Benta does

*In re Innovative*
Civil No. 2013-26
Order
Page 5

not contend otherwise. As this is not a case of mandatory

withdrawal, but permissive withdrawal, the Court may only

withdraw the reference "for cause shown." 28 U.S.C. § 157(d).

In his motion to withdraw the reference, Benta argues that

the "cause" in this adversary proceeding is the Bankruptcy

Court's lack of subject matter jurisdiction over the pretrial

phases of the fraudulent and preferential conveyance actions.

"The manner in which a bankruptcy judge may act on a

referred matter depends on the type of proceeding involved."

*Stern v. Marshall*, 131 S. Ct. 2594, 2603 (2011). Bankruptcy

judges have the statutory authority to hear and enter final

judgments in "all core proceedings arising under title 11, or

arising in a case under title 11." *Id.* at 2596. However,

bankruptcy judges lack the constitutional authority to hear and

enter final judgments on matters unless they implicate "public

rights." *Id.* at 2614 ("'[i]f a statutory right is not closely

intertwined with a federal regulatory program Congress has power

to enact, and if that right neither belongs to nor exists

against the Federal Government, then it must be adjudicated by

an Article III court.'") (quoting *Granfinanciera, S.A. v.*

*Nordberg,* 492 U.S. 33, 54-55 (1989)).

*In re Innovative*
Civil No. 2013-26
Order
Page 6

     In *Stern v. Marshall*, a counterclaim for tortious
interference—though a core claim—could not be decided by a
bankruptcy judge because it "does not fall within any of the
varied formulations of the public rights exception in this
Court's cases." *Stern v. Marshall*, 131 S. Ct. 2594, 2614 (2011)
(analogizing to the fraudulent conveyance claim in
*Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33 (1989), which also
did not fall within the public rights exception and therefore
could not be decided by a bankruptcy judge). A tortious
interference counterclaim "involves the most prototypical
exercise of judicial power: the entry of a final, binding
judgment *by a court* with broad substantive jurisdiction, on a
common law cause of action, when the action neither derives from
nor depends upon any agency regulatory regime." *Stern*, 131 S.
Ct. at 2615 (emphasis in original). The *Stern* Court explained
that the question before it was "a 'narrow' one," and that the
removal of counterclaims like Marshall's would not "meaningfully
change[] the division of labor in the current statute [28 U.S.C.
§ 157]." *Stern*, 131 S. Ct. at 2620.

     Unlike the state law counterclaim at issue in *Stern v.
Marshall* listed in 28 U.S.C. § 157(b)(2)(C), the present action
involves actions enumerated in different portions of the code:
28 U.S.C. § 157(b)(2)(F) and (H). *Id.* The Court must determine

*In re Innovative*
Civil No. 2013-26
Order
Page 7

whether the fraudulent conveyance and preference actions are core proceedings. If so, the Court must then determine whether fraudulent conveyance and preference actions involve public rights such that they may be constitutionally adjudicated in bankruptcy courts.

## A. Statutory Jurisdiction

As previously stated, bankruptcy judges may hear and enter final judgments in "all core proceedings arising under title 11, or arising in a case under title 11." 28 U.S.C. § 157(b)(1). Pursuant to Section 157(b)(2), "core" proceedings include "proceedings to determine, avoid, or recover preferences" and "proceedings to determine, avoid, or recover fraudulent conveyances." *Id.* at § 157(b)(2)(F), (H). Thus, as a general matter, preferential transfer and fraudulent conveyance actions are core proceedings and bankruptcy courts may statutorily enter final judgments in such actions. *See generally Stern*, 131 S. Ct. at 2604-5 (explaining that § 157(b) "permits the bankruptcy court to enter a final judgment" in a proceeding listed under § 157(b)(2) as "core.").

Benta does not challenge the statutory authority of bankruptcy courts to enter judgment in such actions. Rather, Benta argues that bankruptcy courts are devoid of the

*In re Innovative*
Civil No. 2013-26
Order
Page 8

*constitutional* capacity to enter judgments in preferential transfer and fraudulent conveyance actions.

## B. Constitutional Jurisdiction

Having determined that the bankruptcy court is statutorily authorized to enter final judgments in fraudulent conveyance and preference actions, the Court must next determine whether Article III permits Congress to delegate such jurisdiction to bankruptcy courts.

"[I]n general, Congress may not 'withdraw from judicial cognizance any matter which, from its nature, is the subject of a suit at the common law, or in equity, or admiralty.'" *Stern*, 131 S. Ct. at 2609 (quoting *Murray's Lessee v. Hoboken Land & Improvement Co.*, 59 U.S. 272 (1856)). "When a suit is made of 'the stuff of the traditional actions at common law . . . ' and is brought within the bounds of federal jurisdiction, the responsibility for deciding that suit rests with Article III judges in Article III courts." *Stern*, 131 S. Ct. at 2609 (quoting *N. Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 90 (Rehnquist, J., concurring in judgment)). "At the same time, there are matters, involving public rights, which may be presented in such form that the judicial power is capable of action on them, and which are susceptible of judicial determination, but which [C]ongress may or may not bring within

*In re Innovative*
Civil No. 2013-26
Order
Page 9

the cognizance of the courts of the United States, as it may

deem proper." *Murray's Lessee*, 59 U.S. 272, 284 (1855).

A matter may involve public rights if it "flow[s] from a

federal statutory scheme" or is "completely dependent upon

adjudication of a claim created by federal law." *Stern*, 131 S.

Ct. at 2614 (internal quotation marks omitted). The issue here

is whether fraudulent conveyance and preference actions involve

public rights such that they may be constitutionally adjudicated

in bankruptcy courts.

Prior to its *Stern* decision, the Supreme Court, in

*Granfinanciera, S.A. v. Nordberg*, 109 S. Ct. 2782 (1989) had

occasion to address that very issue. Indeed, the *Granfinanciera*

court explained that

> There can be little doubt that fraudulent conveyance
> actions by bankruptcy trustees-suits which, we said in
> *Schoenthal v. Irving Trust Co.*, 287 U.S., at 94-95, 53
> S.Ct., at 51 (citation omitted), "constitute no part
> of the proceedings in bankruptcy but concern
> controversies arising out of it" - are
> quintessentially suits at common law that more nearly
> resemble state - law contract claims brought by a
> bankrupt corporation to augment the bankruptcy estate
> than they do creditors' hierarchically ordered claims
> to a pro rata share of the bankruptcy res. *See Gibson*
> 1022-1025. They therefore appear matters of private
> rather than public right.

*Granfinanciera*, 109 S. Ct. at 2798.

Subsequently, the U.S. Court of Appeals for the Ninth

Circuit, in *In re Bellingham Ins. Agency, Inc.*, 702 F.3d 553

*In re Innovative*
Civil No. 2013-26
Order
Page 10

(9th Cir. 2012), relied on the *Granfinanciera* and *Stern*

decisions in holding that the bankruptcy courts are without

constitutional authority to enter final judgment in fraudulent

conveyance actions.[1] In *Bellingham*, the bankruptcy trustee filed

a fraudulent transfer complaint to recover commissions deposited

into the account of a non-creditor as property of the Chapter 7

estate. The bankruptcy court granted summary judgment in favor

of the trustee. The non-creditor appealed. The district court

affirmed. The non-creditor appealed once again.

On review, the appellate court explained that

"*Granfinanciera* clarified that fraudulent conveyance actions are

not matters of public right, and that a noncreditor retains a

Seventh Amendment right to a jury trial on a bankruptcy

---

[1] The Sixth Circuit has discussed the issue in dicta, stating that

> Next came *Granfinanciera, S.A. v. Nordberg*, which held that the
> public-rights doctrine does not allow a bankruptcy court to
> decide a fraudulent-conveyance claim filed by a bankrupt estate's
> trustee against a non-creditor. 492 U.S. 33, 55 (1989). By means
> of such a claim, the estate seeks to recover property that the
> debtor transferred in anticipation of bankruptcy. Fraudulent-
> conveyance claims, *Granfinanciera* said, "constitute no part of
> the proceedings in bankruptcy." *Id*. at 56. They are
> "quintessentially suits at common law that more nearly resemble
> state-law contract claims . . . to augment the bankruptcy estate
> than they do creditors' hierarchically ordered claims to a pro
> rata share of the bankruptcy res." *Id*. Thus, only an Article III
> court can enter final judgment on such a claim. (*Granfinanciera*
> actually involved the limits of the bankruptcy court's equity
> jurisdiction for Seventh Amendment purposes, not the limits of
> the bankruptcy court's authority for purposes of Article III. But
> the Supreme Court stated that the analysis for each is the same.
> *See id*. at 53-54.)

*Waldman v. Stone*, 698 F. 3d 910, 918-19 (6th Cir. 2012).

*In re Innovative*
Civil No. 2013-26
Order
Page 11

trustee's fraudulent conveyance claim." *Bellingham*, 702 F.3d at 562. The Ninth Circuit concluded that "[t]aken together, *Granfinanciera* and *Stern* settle the question of whether bankruptcy courts have the general authority to enter final judgments on fraudulent conveyance claims asserted against noncreditors to the bankruptcy estate. They do not." *Bellingham*, 702 F.3d at 565. The Court further articulated that

> . . . Article III bars bankruptcy courts from entering final judgments in such actions brought by a noncreditor absent the parties' consent.

*Bellingham*, 702 F.3d at 572.

The *Bellingham* court then turned to the question of "whether bankruptcy judges may constitutionally hear such claims, and prepare recommendations for de novo review by the federal district courts." *Id*. Relying again on the holding in *Stern*, the *Bellingham* Court concluded that "bankruptcy courts have statutory authority to hear and enter proposed findings of fact and conclusions of law in a fraudulent conveyance proceeding asserted by a bankruptcy trustee against a noncreditor, subject to de novo review by a federal district court." *Id*. at 566.

Here, the complaint in the adversary proceeding seeks to recover pre-petition fraudulent and preferential transfers. Such claims are governed by the rule laid out in *Granfinanciera* and

*In re Innovative*
Civil No. 2013-26
Order
Page 12

clarified in *Bellingham*. They may be finally adjudicated only by the district court, absent waiver or consent of the parties.

Although the bankruptcy judge may not *finally* determine such matters as are presented here, assuming *arguendo* there was no waiver in this case, a bankruptcy judge may address pre-trial matters until such time as the matter is ready for trial. *See, e.g.*, *In re Palm Beach Finance Partners, L.P.*, 2013 WL 2036161 at *2 (S.D. Fla. May 14, 2013) (holding that, in a fraudulent conveyance action, "while the Court finds that withdrawal of the reference is appropriate for purposes of conducting the jury trial, at this point in the proceedings, the withdrawal would be premature."); *In re Big V Holding Corp.*, 2002 WL 1482392 (D. Del. July 11, 2002) ("Withdrawal of the reference based on the ground that a party is entitled to a jury trial should be deferred until the case is 'trial ready.'") (citations omitted). Accordingly, the reference shall not be withdrawn until such time as the bankruptcy judge has determined that this matter is trial ready.

The premises considered, it is hereby

**ORDERED** that Benta's Motion to Withdraw the Reference is **DENIED**; and it is further

*In re Innovative*
Civil No. 2013-26
Order
Page 13


      **ORDERED** that the Clerk of Court shall **CLOSE** this file.


                     S\_____

                          **Curtis V. Gómez**

                          **District Judge**